# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

| | | |
|---|---|---|
| AMBER WOLF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:23-CV-04057-BCW |
| | ) | |
| ANNE PRECYTHE, Director of the Missouri | ) | |
| Department of Corrections, in her official capacity, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>OPINION AND ORDER</u>

Before the Court is Plaintiff's motion for temporary restraining order and preliminary

injunction. (Doc. #2). The Court, being duly advised of the premises, denies said motion.

## BACKGROUND

Plaintiff is a transgender woman incarcerated at Northeast Correctional Center in Bowling

Green, Missouri, which is operated by the Missouri Department of Corrections ("MDOC"). Since

coming out in 2019 and while in MDOC custody, Plaintiff has sought gender-affirming medical

care.

On March 21, 2023, Plaintiff filed a complaint against Defendants Anne L. Precythe,

Director of the MDOC; Dan Redington, Warden at Northeast Correctional Center; Centurion of

Missouri, LLC, the contracted provider of healthcare services to those in MDOC custody; and

multiple medical professionals.[1] Plaintiff's complaint asserts two counts of failure to provide

medically necessary care in violation of the Eighth Amendment. Plaintiff alleges she has exhausted

---

[1] Lisa A. Sanderson, Institutional Chief of Mental Health Services; Karen Salsman, Qualified Mental Health Professional; Dr. Michael Krownapple, PsyD, psychologist; Tiffany Koester, Qualified Mental Health Professional; and Dr. Vincent Nwankwo, psychiatrist (collectively "the Centurion Defendants").

1

all available administrative remedies and Defendants, despite being aware of her serious medical needs, have denied her access to hormone therapy. Plaintiff argues that although she was evaluated by Dr. Michael Krownapple for gender dysphoria[2] on October 9, 2020, he was unqualified to perform the assessment and the evaluation was insufficient. (Doc. #39-8). Plaintiff therefore argues she has been denied a competent assessment for gender dysphoria.

In support of her claims, Plaintiff provides a report by Dr. Randi Ettner evaluating and diagnosing Plaintiff's medical needs. (Doc. #39-1). Dr. Ettner is a licensed forensic and clinical psychologist with a specialization in the diagnosis, treatment, and management of individuals with gender dysphoria. Dr. Ettner reviewed Plaintiff's health records and performed an in-person diagnostic assessment on February 17, 2023. Dr. Ettner's evaluation lasted approximately three hours and included the administration of three statistically reliable and valid psychometric tests and an extensive clinical interview.

Dr. Ettner concluded Plaintiff has gender dysphoria and Major Depressive Disorder. Dr. Ettner explained, "given that a high percentage of prisoners with untreated, or inappropriately treated, gender dysphoria engage in self-injurious behaviors, including auto-castration, auto-penectomy or suicide, they are at extremely high risk. Further, gender dysphoria intensifies with age. As dysphoria escalates, emotional stability deteriorates and resilience erodes." (Doc. #39-1 at 17). Dr. Ettner recommended Plaintiff receive hormone therapy and explained "treatment of depression, anxiety or hopelessness associated with gender dysphoria are reasons to initiate hormone therapy." (Doc. #39-1 at 16).

---

[2] "The medical diagnosis of gender dysphoria refers to the condition characterized by clinically significant distress that may accompany the incongruence between one's experienced or expressed gender and one's assigned gender." (Doc. #1 ¶ 29). "For almost all gender dysphoric individuals, hormone therapy is the essential and medically indicated treatment to alleviate the distress of the condition." (Doc. #39-1 at 9).

2

After filing her complaint, Plaintiff filed the instant motion for temporary restraining order and preliminary injunction. (Doc. #2). Plaintiff asks the Court to compel Defendants to provide her with the medically necessary treatment for gender dysphoria under the WPATH Standards of Care[3], including but not limited to gender-affirming hormone therapy.

## LEGAL STANDARD

Under Fed. R. Civ. P. 65(b), the Court has the authority to issue a TRO. When determining whether to grant a TRO the Court must balance four factors: (1) the probability that movant will succeed on the merits; (2) the threat of irreparable harm to the movant; (3) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; and (4) the public interest. Dataphase Sys. v. C L Sys., 640 F.2d 109, 112 (8th Cir. 1981); Tumey v. Mycroft Al, Inc., 27 F.4th 657, 665 (8th Cir. 2022) (the standard for issuance of a TRO or a preliminary injunction are the same). The moving party bears the burden of proving the four factors. Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003).

## ANALYSIS

Plaintiff argues application of the Dataphase factors to the underlying action support granting the TRO and preliminary injunction because: (1) she will likely succeed on the merits of her claim because Defendants have been deliberately indifferent to her serious medical need of gender dysphoria; (2) Plaintiff will suffer irreparable harm absent hormone therapy; (3) the balance

---

[3] The World Professional Association for Transgender Health ("WPATH") is a nonprofit, multidisciplinary professional association dedicated to understanding and treating gender dysphoria. WPATH is recognized internationally as the leading professional organization devoted to the understanding and treatment of gender dysphoria. WPATH publishes and regularly updates the *Standards of Care for the Health of Transsexual, Transgender, and Gender Nonconforming People*, based upon the best available science and expert professional consensus.

3

of equities favor Plaintiff because she suffers an ongoing deterioration of her mental and physical health; and (4) the public's interest in providing constitutionally adequate healthcare to prisoners.

### I. Irreparable harm

The Court begins its analysis by considering whether Plaintiff demonstrates irreparable harm because a movant's failure to do so "is a sufficient ground to deny a preliminary injunction." Progressive Techs., Inc. v. Chaffin Holdings, Inc., 33 F.4th 481, 485 (8th Cir. 2022).

"Irreparable harm occurs when a party has no adequate remedy at law, typically because [the party's] injuries cannot be fully compensated through an award of damages." Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 319 (8th Cir. 2009). "The failure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction, for the basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." Gelco Corp. v. Coniston Partners, 811 F.2d 414, 418 (8th Cir. 1987) (citations omitted); Watkins, 346 F.3d at 844.

A threat to a constitutional right does not automatically constitute irreparable harm. Toigo v. Dep't of Health & Senior Servs., 549 F. Supp. 3d 985, 994 (W.D. Mo. 2021) (citing Iowa Utils. Bd. v. FCC, 109 F.3d 418, 425 (8th Cir. 1996). In non-First Amendment contexts, a movant must demonstrate not only a constitutional violation but that the irreparable harm is certain and 'of such imminence that there is a clear and present need for equitable relief." Id.; Bursey v. City of Texarkana, No. 4:12-cv-04050, 2012 U.S. Dist. LEXIS 172554, at *4 (W.D. Ark. Dec. 5, 2012) ("the mere fact that Plaintiffs allege a constitutional deprivation does not dispense with the irreparable harm requirement for granting injunctive relief.").

Plaintiff argues she suffers irreparable medical harm resulting from Defendants' refusal to provide her with the hormone therapy needed to treat gender dysphoria. Specifically, Plaintiff

4

argues she suffers from anxiety and depression and "the tremendous risks engendered by untreated gender dysphoria." (Doc. #3 at 14).

Defendants Precythe and Redington argue Plaintiff has not demonstrated irreparable harm because none of Plaintiff's medical professionals within the MDOC have diagnosed her with gender dysphoria. Additionally, Defendants Precythe and Redington argue Dr. Ettner's report does not find Plaintiff is likely to engage in self-harm or that Plaintiff is emotionally unstable. The Centurion Defendants argue Plaintiff has and continues to receive adequate psychological and psychiatric care for her depression. The Centurion Defendants also argue there is nothing urgent about the process of transitioning particularly because of the changing nature of Plaintiff's mental health since 2019. Lastly, the Centurion Defendants argue Plaintiff does not suffer irreparable harm because she is awaiting reevaluation for gender dysphoria under Centurion's new guidelines, which Defendants allege are consistent with WPATH standards and the DSM-5 criteria.

While the Court recognizes the sensitive nature of Plaintiff's medical history, it finds Plaintiff has not met her legal burden of demonstrating she will suffer irreparable harm absent an injunction granting her immediate access to hormone therapy.

Throughout the report, Dr. Ettner describes the broad implications of delaying treatment for gender dysphoria, however, the report does not contain specific harms Plaintiff will certainly suffer if she is not provided with immediate hormone treatment. Additionally, Dr. Ettner opines that for individuals with gender dysphoria, the mental health concerns *will* only improve when the underlying diagnosis is treated. (Doc. #39-1 at 16) (emphasis added). And, as emphasized by Defendants Precythe and Redington, Dr. Ettner does not find Plaintiff is likely to engage in self-harm or that Plaintiff is emotionally unstable.

At this time, the Court is not faced with the underlying determination of whether Plaintiff is entitled to treatment for gender dysphoria. Instead, the Court considers if Plaintiff is entitled to the "extraordinary remedy" of a preliminary injunction. Watkins, 346 F.3d at 844. Given Plaintiff is currently being treated for her anxiety and depression and will be re-evaluated under Centurion's new process, she has not demonstrated that absent Court intervention she will suffer irreparable harm. (Doc. #38 ¶¶ 61-74); Minn. Asso. of Health Care Facs., Inc. v. Minn. Dep't of Pub. Welfare, 602 F.2d 150, 154 (8th Cir. 1979) ("[T]he speculative nature of the threatened harm support[s] the denial of injunctive relief."); Reid v. Griffin, 808 F.3d 1191, 1193 (8th Cir. 2015) (finding plaintiff failed to establish deliberate medical indifference in part because plaintiff did not "allege any failure to provide general mental health treatment or monitoring unrelated to the denial of her request for [Gender Identity Disorder] treatment.").

Therefore, although Plaintiff may ultimately require hormone treatment, she has not demonstrated her alleged harm "is certain and great and of such imminence that there is a clear and present need for equitable relief." Wildhawk Invs., LLC v. Brava I.P., LLC, 27 F.4th 587, 597 (8th Cir. 2022) (citations omitted).

## II.    Likelihood of success

Even assuming Plaintiff has established the threat of irreparable harm, Plaintiff has not established a likelihood of success on the merits of her claims.

"There are two standards a district court may apply when assessing a movant's probability of success on the merits. The first, which applies in most instances, directs the district court to ask whether the party requesting a preliminary injunction has a 'fair chance of prevailing.'" D.M. v. Minn. State High Sch. League, 917 F.3d 994, 999 (8th Cir. 2019) (citing Planned Parenthood Minn., N.D., S.D., v. Rounds, 530 F.3d 724, 732 (8th Cir. 2008)). This fair-chance standard does

not require the party seeking relief to "show a greater than fifty per cent likelihood that [plaintiff] will prevail on the merits." D.M., 917 F.3d at 999. The second standard is more rigorous and "calls on the district court to determine, as a threshold matter, whether the movant is 'likely to prevail' on his or her claims." Id. "The likely-to-prevail standard applies when a preliminary injunction is sought to enjoin the implementation of a duly enacted state statute." Id.

Here, Plaintiff asserts that because she is not seeking to enjoin the statute, she only needs to demonstrate a "fair chance of prevailing on the merits." (Doc. #3 at 8-9). Plaintiff argues this factor weighs in her favor because gender dysphoria is an objectively serious medical need which Defendants have ignored/failed to properly evaluate. Plaintiff argues Defendants' delay in treatment and improper evaluation amount to medical indifference. Plaintiff thus argues Dr. Ettner's report is affirmative evidence that Defendants' treatment was constitutionally inadequate.

Defendants Precythe and Redington argue Plaintiff regularly receives mental health treatment, including medication for depression, and Plaintiff merely disagrees over her diagnosis which is not actionable under the Eighth Amendment. Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997) (disagreement as to diagnosis is not actionable under the Eighth Amendment). Similarly, the Centurion Defendants argue inmates do not have a right to "unqualified access to healthcare" nor do they have a right to a particular course of treatment. Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997). The Centurion Defendants thus argue because Plaintiff merely disagrees with the clinical opinions of her providers, she is not likely to succeed on the merits of her claim.

"Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment." Meloy v. Bachmeier, 302 F.3d 845, 848 (8th Cir. 2002). "To establish deliberate

indifference, a prisoner must prove [they] had objectively serious medical needs and the official actually knew of but deliberately disregarded those needs." Id. at 848-49.

"Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs." Dulany, 132 F.3d at 1239 (citations omitted). "Deliberate indifference entails a level of culpability equal to the criminal law definition of recklessness, that is, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." McRaven v. Sanders, 577 F.3d 974, 982 (8th Cir. 2009) (citations omitted).

The Eighth Circuit recognizes gender dysphoria as an objectively serious medical need. Reid, 808 F.3d at 1192. Therefore, the Court need only consider whether Plaintiff has a fair chance of establishing Defendants knew and deliberately ignored her medical needs.

When reviewing Dr. Krownapple's evaluation of Plaintiff for gender dysphoria, Dr. Ettner opined:

> [Plaintiff] does not appear to have been appropriately evaluated for gender dysphoria. Many of the symptoms and indicia of the condition were ignored. For example, a review of [Plaintiff's] medical records indicates a chart note on 6/21; "weight and hairstyle appear feminine…no diagnosis, identifies as transgender. Will participate in transgender committee meetings every 6 months." [Plaintiff] has been provided with female undergarments, some gender affirming items, and even information regarding "hormone replacement therapy." Nevertheless, an evaluator dismissed the obvious features of gender dysphoria, and stated on 11/11/21: "the history that *he* has reported and *his* overall report is not consistent with Gender Dysphoria." (italics added).
>
> Gender dysphoria is a specialized area of medicine. Although Dr. Krownapple is a psychologist, that does not automatically bestow upon a provider the necessary experience and training required to assess or generate treatment plans for gender dysphoric patients. The WPATH [Standards of Care] mandate that development of any treatment plan and all subsequent treatment must be administered by clinicians qualified in treating patients with gender dysphoria. Likewise, the American

8

Psychological Association has explicit ethical guidelines that prohibit practicing outside one's area of expertise.

In his denial of a gender dysphoria diagnosis that would prompt treatment, Dr. Michael Krownapple opined: "Offender does not meet gender dysphoria diagnosis criteria as offender had difficulty presenting a clearly defined gendered identity."

There is no rationale for denying a patient medically necessary treatment based on their inability to provide a "clearly defined gendered identity." I have treated many gender dysphoric patients who have comorbid developmental delays, cognitive difficulties, or other impediments to providing historical data. That by no means disqualifies them from receiving appropriate care.

(Doc. #39-1 at 16).

The Court finds Plaintiff has not shown a sufficient probability of prevailing on the merits of her claims. Although Plaintiff presents evidence which supports her contention that Defendants may have deviated from the applicable standards of care, Plaintiff has not demonstrated a fair chance of proving deliberate indifference. McRaven, 577 F.3d at 983 ("Although medical negligence does not violate the Eighth Amendment[,] medical treatment may so deviate from the applicable standard of care as to evidence a physician's deliberate indifference.").

The Court recognizes Dr. Ettner's concerns with Centurion's new process (Doc. #40-2) but finds Plaintiff's evidence does not show a fair chance of establishing Defendants acted deliberately indifferent. Bender v. Regier, 385 F.3d 1133, 1137 (8th Cir. 2004) ("a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); Wright v. Parker, No. 4:21-cv-00069-KGB-JJV, 2022 U.S. Dist. LEXIS 237751, at *11 n.8 (E.D. Ark. Apr. 11, 2022) (citing Hamner v. Burls, 937 F.3d 1171, 1177 (8th Cir. 2019)) ("failure to follow WPATH guidelines could, at most, be negligence or gross negligence, which is not a sufficient basis for imposing constitutional liability").

9

It is undisputed Plaintiff's medical needs have been evaluated and treated by Defendants during her term of incarceration. (Docs. #39-4-8). It is also undisputed that Plaintiff was evaluated, in some respects, by Dr. Krownapple for gender dysphoria on October 9, 2020. (Doc. #39-8); Dulany, 132 F.3d at 1239 ("prison doctors remain free to exercise their independent medical judgment."). Moreover, Plaintiff will be reevalauted for gender dysphoria under Centurion's new process. (Doc. #38 at ¶¶ 64, 74). Lastly, at this time, there is no evidence showing a fair chance of success regarding deliberate delay in diagnosis or treatment. Hamner, 937 F.3d at 1177 ("Prison officials may not deliberately delay or deny prisoners' medical care."). For these reasons, Plaintiff has not shown she has a fair chance of prevailing on her claims.

### III.     Balance of harm and the public interest

The remaining factors for the Court's consideration are "the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant[] and the public interest." Dataphase, 640 F.2d at 113. These factors "merge when the Government is the opposing party." Eggers v. Evnen, 48 F.4th 561, 564 (8th Cir. 2022) (citing Nken v. Holder, 556 U.S. 418, 435 (2009)).

Plaintiff argues these factors weigh in her favor because protection of her health and constitutional rights outweigh any financial and administrative harm Defendants may suffer. Defendants Precythe and Redington argue these factors weigh in their favor because, in the event Plaintiff does not prevail on the merits of her claim, the MDOC would be harmed if required to provide Plaintiff with medically unnecessary hormone treatment. Therefore, Defendants Precythe and Redington argue the balance of equities supports maintaining the status quo and denying the motion. The Centurion Defendants argue it is not in the public's interest to grant the requested relief nor is it in the public's interest to prioritize Plaintiff's medical care over the care of other

inmates who are waiting for an evaluation under Centurion's new process. The Centurion Defendants also argue the relief sought may implicate pending state legislation.

The Court finds the remaining factors are neutral to the analysis. While it is in the public's interest to protect Plaintiff's constitutional rights, Defendants are uniquely positioned given the nature of the dispute. Additionally, the balance of the harms does not weigh in favor of either side specifically because multiple individuals housed at Northeast Correctional Center are seeking reevaluation under Centurion's new process. Having found Plaintiff has not demonstrated irreparable harm nor a likelihood of success on the merits, the remaining factors do not impact the Court's ruling. Plaintiff's motion is thus denied. Accordingly, it is herby

ORDERED Plaintiff's motion for temporary restraining order and preliminary injunction (Doc. #2) is DENIED.

IT IS SO ORDERED.


DATED: July 19, 2023                                    /s/ Brian C. Wimes
                                                        JUDGE BRIAN C. WIMES
                                                        UNITED STATES DISTRICT COURT

11